1  RACHELE R. BYRD (SBN 190634)
   MARISA C. LIVESAY (SBN 223247)
2  BRITTANY N. DEJONG (SBN 258766)
   **WOLF HALDENSTEIN ADLER**
3    **FREEMAN & HERZ LLP**
   750 B Street, Suite 2770
4  San Diego, CA 92101
   Telephone: (619) 239-4599
5  Facsimile: (619) 234-4599
   byrd@whafh.com
6  livesay@whafh.com
   dejong@whafh.com
7
   *Attorneys for Plaintiff*
8  [Additional Counsel on Signature Page]

9                **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
10

11  ELAINE WANG, on behalf of herself and all      )   Case No.
    others similarly situated,                     )
12                                                  )
                        Plaintiff,                  )   **CLASS ACTION COMPLAINT FOR**
13                                                  )   **VIOLATIONS OF SECTIONS 14(a) AND**
            v.                                      )   **20(a) OF THE SECURITIES EXCHANGE**
14                                                  )   **ACT OF 1934**
    PACIFIC BIOSCIENCES OF CALIFORNIA,             )
15  INC., MICHAEL HUNKAPILLER, Ph.D.,              )   <u>DEMAND FOR JURY TRIAL</u>
    DAVID BOTSTEIN, Ph.D., WILLIAM W.              )
16  ERICSON, CHRISTIAN HENRY, RANDY                )
    LIVINGSTON, JOHN F. MILLIGAN, Ph.D.,           )
17  MARSHALL L. MOHR, KATHY                        )
    ORDOÑEZ, and LUCY SHAPIRO,                     )
18                                                  )
                        Defendants.                 )
19                                                  )
                                                    )
20  _____        )

21

22

23

24

25

26

27

28

Plaintiff Elaine Wang ("Plaintiff"), on behalf of herself and all others similarly situated, by her attorneys, makes the following allegations against Pacific Biosciences of California, Inc. ("Pacific Biosciences" or the "Company") and the members of the board of directors of Pacific Biosciences (the "Board" or "Individual Defendants," along with Pacific Biosciences, collectively referred to as the "Defendants"), for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), Rule 14a-9, 17 C.F.R. § 240.14a-9 and SEC Regulation G, 17 C.F.R. § 244.100 in connection with the Preliminary Proxy Statement on Schedule 14A (the "Proxy") filed with the United States Securities and Exchange Commission ("SEC") in connection with the acquisition of Pacific Biosciences by Illumina, Inc. and its affiliates (collectively "Illumina") (the "Proposed Transaction").  The allegations in this complaint are based on the personal knowledge of Plaintiff as to herself and on information and belief (including the investigation of counsel and review of publicly available information) as to all other matters stated herein.

## INTRODUCTION

1.      This is a shareholder class action brought by Plaintiff on behalf of herself and all other similarly situated public shareholders of Pacific Biosciences to enjoin the Proposed Transaction whereby the Board has agreed to sell Pacific Biosciences to Illumina Merger Sub, Inc. (the "Merger Sub"), a wholly owned subsidiary of Illumina, for $8.00 per share in cash (the "Merger Consideration").  The Board has unanimously recommended to the Company's stockholders that they vote for the Proposed Transaction.  The Defendants expect to complete the Proposed Transaction in mid-2019.

2.      The Proposed Transaction is the product of a hopelessly flawed process that is designed to ensure the sale of Pacific Biosciences to Illumina on terms preferential to Defendants and other Pacific Biosciences insiders and to subvert the interests of Plaintiff and the other public stockholders of the Company.

3.      To convince Pacific Biosciences stockholders to vote for the Proposed Transaction, on December 5, 2018, the Board authorized the filing of a materially incomplete and misleading Proxy. Defendants have failed to disclose certain material information necessary for Pacific

COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) and 20(a) OF
THE SECURITIES EXCHANGE ACT OF 1934

Biosciences stockholders to properly assess the fairness of the Proposed Transaction, thereby violating SEC rules and regulations and rendering certain statements in the Proxy materially incomplete and misleading.

4.      In particular, the Proxy contains materially incomplete and misleading information concerning the financial forecasts for the Company and Illumina that were both prepared and relied upon by the Board in recommending the Company's stockholders to vote for the Proposed Transaction. The same forecasts were used by Pacific Biosciences's financial advisor, Centerview Partners LLC ("Centerview"), in conducting its valuation analyses in support of its fairness opinions. Also omitted and/or misleading is information regarding Centerview's financial analysis, and the background of the Proposed Transaction.

5.      The material information that has been omitted from the Proxy must be disclosed prior to the shareholder meeting in order to allow the stockholders to make an informed decision regarding whether to support the merger.

6.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless, and until, all material information discussed below is disclosed to Pacific Biosciences stockholders sufficiently in advance of the special meeting of the Pacific Biosciences stockholders or, in the event the Proposed Transaction is consummated without corrective disclosures, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

8.      This Court has personal jurisdiction over each defendant named herein because each defendant is either a corporation that does sufficient business in California or an individual who has sufficient minimum contacts with California to render the exercise of jurisdiction by the California courts permissible under traditional notions of fair play and substantial justice.  All of the

Defendants conduct business and/or maintain offices in California. The headquarters of Pacific Biosciences is located at 1305 O'Brien Drive, Menlo Park, California 94025.

9. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Pacific Biosciences is headquartered in this District.

## PARTIES

*Plaintiff*

10. Plaintiff is a resident of Fairfield County, Connecticut and has owned the common stock of Pacific Biosciences since prior to the announcement of the Proposed Transaction herein complained of, and continues to own this stock.

*Defendants*

11. Pacific Biosciences is a corporation duly organized and existing under the laws of the State of Delaware and maintains its principal offices in Menlo Park, California. Pacific Biosciences is, and at all relevant times hereto was, listed and traded on the NASDAQ under the symbol "PACB." Pacific Biosciences designs, develops, and manufactures sequencing systems to resolve genetically complex problems. The Company's single molecule real-time (SMRT) sequencing technology enables single molecule real-time detection of biological processes. It offers PacBio RS II and Sequel Systems that conducts, monitors, and analyzes single molecule biochemical reactions in real time. The Company also provides consumable products, including SMRT cells, as well as various reagent kits, such as template preparation, binding, and sequencing kits. Its customers include research institutions; commercial laboratories; genome centers; clinical, government, and academic institutions; genomics service providers; pharmaceutical companies; and agricultural companies.

12. Defendant Michael Hunkapiller, Ph.D. ("Hunkapiller") has been the Company's President and Chief Executive Officer ("CEO") since 2012. Hunkapiller is also the Company's Chairman of the Board and has been a member of the Board since 2005.

13. Defendant David Botstein, Ph.D. has served as a director of the Company since July 2012.

14.     Defendant William W. Ericson ("Ericson") has served as a director of the Company since 2004 and is the lead independent director.

15.     Defendant Christian Henry ("Henry") has served as a director of the Company since July 2018.  Henry was a Chief Financial Officer, Chief Commercial Officer and General Manager of the Life Sciences Business at Illumina from 2005 through January 2017.

16.     Defendant Randy Livingston ("Livingston") has served as a director of the Company since 2009.

17.     Defendant John F. Milligan, Ph.D. ("Milligan") has served as a director of the Company since 2013.

18.     Defendant Marshall L. Mohr has served as a director of the Company since 2012.

19.     Defendant Kathy Ordoñez ("Ordoñez") has served as a director of the Company since December 2014.  Ordoñez is also the Company's Chief Commercial Officer and Executive Vice President.

20.     Defendant Lucy Shapiro has served as a director of the Company since 2012.

21.     The Defendants referred to in paragraphs 12-20 are collectively referred to herein as the "Individual Defendants" and/or the "Board."

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this action as a class action, pursuant to Federal Rule of Civil Procedure 23, on behalf of all holders of the common stock of the Company (except the Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants) and their successors in interest, who are or will be threatened with injury arising from Defendants' actions, as more fully described herein (the "Class").

23.     This action is properly maintainable as a class action.

24.     The Class is so numerous that joinder of all members is impracticable.   As of October 31, 2018, there were reportedly approximately 148,901,892 shares of Pacific Biosciences common stock outstanding owned by thousands of shareholders spread across the United States.

25.     There are questions of law and fact which are common to the Class including, *inter alia*, the following:   (a) whether Defendants disclosed material information that includes non-

COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) and 20(a) OF
THE SECURITIES EXCHANGE ACT OF 1934

GAAP financial measures without providing a reconciliation of the same non-GAAP financial measures to their most directly comparable GAAP equivalent in violation of Section 14(a) of the Exchange Act; (b) whether Defendants have misrepresented or omitted other material information concerning the financial analysis and the background of the Proposed Transaction in the Proxy in violation of Section 14(a) of the Exchange Act; (c) whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and (d) whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Transaction based on the materially incomplete and misleading Proxy.

26.    Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  The claims of Plaintiff are typical of the claims of other members of the Class and Plaintiff has the same interests as the other members of the Class. Plaintiff will fairly and adequately represent the Class.

27.    Defendants have acted in a manner which affects Plaintiff and all members of the Class alike, thereby making appropriate injunctive relief and/or corresponding declaratory relief with respect to the Class as a whole.

28.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for defendants, or adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members or substantially impair or impede their ability to protect their interests.

**SUBSTANTIVE ALLEGATIONS**

*Background of the Merger*

29.    Starting in August 2017, the Board began a strategic review with the assistance of "an internationally recognized investment banking firm." The Company contacted 23 parties concerning their interest in a strategic partnership with the Company, including Illumina and F. Hoffmann-La Roche Ltd ("Roche"), a company the Company had collaborated with on the development and supply of products for use with the Company's DNA sequencing technology from

2013 until 2016.  Most of the 23 parties declined to pursue discussions.

30.     Company management began discussing a possible transaction with Illumina management in September 2017.  However, it was not until July 19, 2018 that defendant Ericson, the Company's lead independent director, started to participate in these discussions.

31.     On a parallel track, the Company's management was pursuing partnership opportunities with other companies in the Chinese market, and in September 2018, the Company identified a strategic partner referred to as "Party A" and began actively discussing a commercial partnership.  Party A was also one of the 23 parties previously contacted.

32.     On September 11, 2018, the Company and Illumina executed a confidentiality agreement to replace one that was in place previously. It is unclear whether the agreement contained any standstill or "don't-ask-don't-wave" ("DADW") provisions.

33.     Two weeks later, Illumina offered to acquire the Company for $7.00 per share with an exclusivity requirement for a period of 30 days.

34.     The next day, the Board met to discuss Illumina's proposal, and it was not until then that the Board established a committee of directors to oversee the sales process (the "Transactions Committee").  The members of the Transaction Committee include defendants Ericson, Livingston, and Milligan. The reasons for the formation of the Transaction Committee include: (1) the potentially significant workload that could be involved in the sales process; (2) Company management might need feedback and direction; and (3) the benefits of having independent directors oversee and direct the sales process.

35.     After the September 25th Board meeting, the Company contacted Centerview but did not formally engage it as its financial advisor until October 8, 2018.

36.     As the negotiations with Illumina were ongoing, on October 12, 2018, the Company entered into a non-binding term sheet with Party A concerning its partnership transaction. The Proxy did not mention what, if anything, happened after the execution of the term sheet.

37.     In October 2018, the Company and Centerview decided not to contact any other companies and the Company and Illumina proceeded with negotiating the Merger Agreement, which was signed on November 1, 2018.

COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) and 20(a) OF
THE SECURITIES EXCHANGE ACT OF 1934

*The Proposed Transaction*

38. On November 1, 2018, Pacific Biosciences announced that it had entered into the Agreement and Plan of Merger (the "Merger Agreement") with Illumina, whereby Illumina would acquire Pacific Biosciences in a two-step merger, with the Company surviving the Proposed Transaction as an indirect, wholly owned subsidiary of Illumina:

> SAN DIEGO & MENLO PARK, Calif.--(BUSINESS WIRE)--Nov. 1, 2018--Illumina, Inc. (NASDAQ: ILMN) and Pacific Biosciences (NASDAQ:PACB) today announced they have signed an agreement for Illumina to acquire Pacific Biosciences at a price of $8.00 per Pacific Biosciences share in an all-cash transaction. This price represents a premium of 71% to Pacific Biosciences' 30 trading day volume weighted average share price as of the market close on October 31st, 2018, and a total enterprise value of approximately $1.2 billion on a fully diluted basis.
>
> The agreement has been approved by the board of directors of Illumina and Pacific Biosciences. The acquisition complements Illumina sequencing solutions with accurate long-read sequencing capabilities to answer a set of complex genomic questions. While Illumina's accurate and economic short-read sequencing platforms address the majority of sequencing applications optimally, select applications, such as de novo sequencing and sequencing of highly homologous regions of genomes, are better addressed with accurate long-reads. With its acquisition of Pacific Biosciences, Illumina will be positioned to provide integrated workflows and novel innovations that bring together the best of both technologies to help researchers advance their discoveries faster and clinicians offer new tests economically.
>
> "PacBio's unmatched accuracy mirrors that of Illumina's in short-read sequencing. Combining the two technologies positions us to reach more applications, accelerate the pace of genomic discovery and bolster our innovation engine which has been a hallmark of Illumina since our inception," said Francis deSouza, President and Chief Executive Officer of Illumina. "PacBio's relentless pursuit to improve sequencing accuracy, while driving down the cost, underscores the potential of long-reads to expand sequencing to new customers and applications."
>
> "Illumina continues to democratize the use of sequencing at an unprecedented rate. Through this combination, thousands of researchers will now have direct access to this technology," said Michael Hunkapiller, Ph.D., Chief Executive Officer of Pacific Biosciences. "Illumina and Pacific Biosciences have shared values and a commitment to innovation. Our complementary sequencing technology, once integrated, will offer customers a new standard of insight and understanding, opening new frontiers of genomic utility."
>
> The transaction is subject to approval by the shareholders of Pacific Biosciences, as well as other customary closing conditions, including applicable regulatory approvals. Illumina expects to close the transaction in mid-2019. Goldman Sachs & Co. LLC is serving as financial advisor and Covington & Burling LLP is serving as legal advisor to Illumina. Centerview Partners LLC is serving as financial advisor and Wilson Sonsini Goodrich & Rosati LLP is serving as legal advisor to Pacific Biosciences.

- 7 -

*The Materially Misleading and Incomplete Solicitation Statement*

39.     On December 5, 2018, Defendants caused the Proxy to be filed with the SEC in connection with the Proposed Transaction. The Proxy solicits the Company's shareholders to vote for the Proposed Transaction. Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to support the deal, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Company Projections*

40.     The Proxy discloses certain projections on pages 53-55, which were developed by the Company's management, relied upon the Board in recommending the Proposed Transaction, and utilized by Centerview in rendering its fairness opinions. The Proxy also states that the projections "were not prepared . . . to comply[] with accounting principles generally accepted in the United States (which we refer to as 'GAAP')." Proxy at 53.

41.     As part of the projections, the Proxy further discloses the values and definitions of several non-GAAP (Generally Accepted Accounting Principles) financial metrics: (1) EBIT; (2) EBITDA; and (3) Unlevered Free Cash Flow; but fails to provide: (i) the value of certain line items used to calculate these non-GAAP measures; or (ii) a reconciliation to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).  Proxy at 54-55.

42.     When a company discloses non-GAAP financial measures in a registration statement that were relied on by a board of directors to recommend that shareholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all forecasts and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with

1   GAAP. 17 C.F.R. § 244.100.

2       43.    Indeed, the SEC has increased its scrutiny of the use of non-GAAP financial

3   measures in communications with shareholders. Former SEC Chairwoman Mary Jo White has

4   stated that the frequent use by publicly traded companies of unique company-specific non-GAAP

5   financial measures (as Pacific Biosciences included in the Proxy here), implicates the centerpiece

6   of the SEC's disclosures regime:

7           In too many cases, the non-GAAP information, which is meant to supplement the
8           GAAP information, has become the key message to investors, crowding out and
            effectively supplanting the GAAP presentation. Jim Schnurr, our Chief
9           Accountant, Mark Kronforst, our Chief Accountant in the Division of
            Corporation Finance and I, along with other members of the staff, have spoken
10          out frequently about our concerns to raise the awareness of boards, management
            and investors. And last month, the staff issued guidance addressing a number of
11          troublesome practices *which can make non-GAAP disclosures misleading*: the
            lack of equal or greater prominence for GAAP measures; exclusion of normal,
12          recurring cash operating expenses; individually tailored non-GAAP revenues;
            lack of consistency; cherry-picking; and the use of cash per share data. I strongly
13          urge companies to carefully consider this guidance and revisit their approach to
            non-GAAP disclosures. I also urge again, as I did last December, that
14          appropriate controls be considered and that audit committees carefully oversee
15          their company's use of non-GAAP measures and disclosures.[1]

16

17      44.    The SEC has repeatedly emphasized that disclosure of non-GAAP forecasts can be

18  inherently misleading, and has therefore heightened its scrutiny of the use of such forecasts.[2]

19      45.    At the very least, the Company must disclose the line item forecasts for the

20  financial metrics that were used to calculate the aforementioned non-GAAP measures. Such

21  forecasts are necessary to make the non-GAAP forecasts included in the Proxy not misleading.

22        [1]     Mary Jo White, *Keynote Address, International Corporate Governance Network Annual*

23  *Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-*
    *GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-

24  speech.html (last visited Dec. 11, 2018). (Emphasis added).
          [2]     *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's*

25  *Evolving Views*, HARVARD LAW SCHOOL FORUM ON CORPORATE GOVERNANCE AND FINANCIAL

26  REGULATION (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-
    measures-the-secs-evolving-views/ (last visited Dec. 11, 2018); Gretchen Morgenson, *Fantasy*

27  *Math Is Helping Companies Spin Losses Into Profits*, N.Y. TIMES (Apr. 22, 2016),
    http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-

28  into-profits.html (last visited Dec. 11, 2018).

Indeed, the Defendants acknowledge the misleading nature of non-GAAP financial measures, as Pacific Biosciences stockholders are cautioned:

> The Forecasts were not prepared with a view toward public disclosure or to complying with accounting principles generally accepted in the United States (which we refer to as "GAAP"). In addition, the Forecasts were not prepared with a view toward complying with the guidelines established by the SEC or by the American Institute of Certified Public Accountants with respect to prospective financial information. In addition, the Forecasts assume that Pacific Biosciences would continue as a standalone company and do not reflect the impact of the merger (if it is completed).

Proxy at 53.

46.     Thus, to bring the Proxy into compliance with Regulation G as well as cure the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information on pages 54-55, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

**Centerview's Financial Analyses**

47.     The financial projections at issue were relied upon by Centerview in connection with its analysis and fairness opinion.

48.     With respect to the *Selected Public Company Analysis*, the Proxy fails to disclose the individual multiples utilized by Centerview in the analysis and whether any benchmarking against the Company was performed.  A fair summary of this analysis requires the disclosure of the individual multiples for each company.  Merely providing a range of values that a banker applies is insufficient, as shareholders are unable to assess whether the banker applied the appropriate multiples, or instead, applied arbitrary and/or unreasonably low multiples in order to drive down the Company's implied value.   Accordingly, the omission of this material information renders the summary of the analysis provided in the Proxy misleading. Proxy at 48-50.

49.     With respect to the *Selected Precedent Transactions Analysis*, the Proxy fails to disclose the individual multiples and financial metrics for each transaction selected by Centerview. A fair summary of this analysis requires the disclosure of the individual multiples for each transaction.  Merely providing a range of values that a banker applies is insufficient, as shareholders

COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) and 20(a) OF
THE SECURITIES EXCHANGE ACT OF 1934

are unable to assess whether the banker applied the appropriate multiples, or instead, applied arbitrary and/or unreasonably low multiples in order to drive down the Company's implied value. Accordingly, the omission of this material information renders the summary of the analysis provided in the Proxy misleading. Proxy at 50-51.

50.     With respect to the *Discounted Cash Flow Analysis*, the Proxy fails to disclose: (i) the inputs and assumptions underlying the calculation of the discount rate range of 11% to 13%, including the weighted average cost of capital; (ii) a reconciliation of UFCF to its most comparable GAAP compliant financial measure; (iii) line items used in its calculation; (iv) the inputs and assumptions underlying the selected range of terminal value adjusted EBITDA multiples of 12.0x to 16.0x; and (v) the actual terminal values calculated.  Proxy at 51.

51.     With respect to the *Premiums Paid in Selected Merger and Acquisition Transactions*, the Proxy fails to disclose the individual multiples and financial metrics for each transaction selected by Centerview.  Proxy at 52.

52.     With respect to the *Background of the Merger*, the Proxy discloses that the Company entered into non-disclosure agreements with Illumina.  It is unclear from the Proxy if the non-disclosure agreement contains any sort of standstill provision and, if it does contain such a provision, if it terminates upon entering into the Merger Agreement.  Proxy at 36.

53.     The Proxy also discloses that the Company entered into a non-binding term sheet with Party A. But the Proxy fails to disclose whether the Company executed any non-disclosure agreement with Party A.  Proxy at 37.

54.     The Proxy also fails to disclose whether defendant Henry recused himself from the decision making regarding the Proposed Transaction because of his prior employment with Illumina.

55.     In sum, the Proxy independently violates both (i) Regulation G, which requires a presentation and reconciliation of any non-GAAP financial to their most directly comparable GAAP equivalent, and (ii) Rule 14a-9, since the material omitted information renders certain statements, discussed above, materially incomplete and misleading. As the Proxy independently contravenes the SEC rules and regulations, Defendants violated Section 14(a) and Section 20(a) of

the Exchange Act by filing the Proxy to garner support of the Proposed Transaction from Pacific Biosciences shareholders.

56.     Absent disclosure of the foregoing material information prior to the shareholder vote, Plaintiff and the other members of the Class will not be able to make a fully informed decision regarding whether to vote for the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## FIRST CAUSE OF ACTION
### On Behalf of Plaintiff and the Class Against All Defendants for
### Violations of Section 14(a) of the Exchange Act and
### 17 C.F.R. § 244.100 Promulgated Thereunder

57.     Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

58.     Section 14(a) of the Exchange Act provides that it is "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

59.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Proxy communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

60.     As set forth above, Pacific Biosciences filed and delivered the Proxy to its stockholders, which Defendants knew, or recklessly disregarded that they, contained material omissions and misstatements described herein.

61.     Defendants violated Section 14(a) of the Exchange Act by issuing the Proxy in which they made untrue statements of material facts or failed to state all material facts necessary in

order to make the statements made, in the light of the circumstances under which they are made, not misleading, in conjunction with the Proposed Transaction. Defendants knew or recklessly disregarded that the Proxy failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

62. The Proxy was prepared, reviewed and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders, the intrinsic value of the Company, the Company's financial projections, and the financial advisor's valuation analyses and resultant fairness opinion.

63. In so doing, Defendants made untrue statements of material fact and omitted material information necessary to make the statements that were made not misleading in violation of Section 14(a) of the Exchange Act.  By virtue of their positions within the Company and/or roles in the process and in the preparation of the Proxy, Defendants were aware of this information and their obligation to disclose this information in the Proxy.

64. The omissions and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding whether to vote for the Proposed Transaction or seek appraisal.  In addition, a reasonable investor would view the information identified above which has been omitted from the Proxy as altering the "total mix" of information made available to stockholders.

65. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Proxy, causing certain statements therein to be materially incomplete and therefore misleading.  Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Proxy, rendering certain portions of the Proxy materially incomplete and therefore misleading.

66. The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, and Plaintiff and the Class and Pacific Biosciences stockholders will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the shareholder vote.

**SECOND CAUSE OF ACTION**

**On Behalf of Plaintiff and the Class Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act**

67.     Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

68.     The Individual Defendants acted as controlling persons of Pacific Biosciences within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Pacific Biosciences, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

69.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

70.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to vote their shares in support of the Proposed Transaction. They were thus directly involved in preparing the Proxy.

71.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

72.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of

COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) and 20(a) OF
THE SECURITIES EXCHANGE ACT OF 1934

1  the Exchange Act.

2      73.    As set forth above, the Individual Defendants had the ability to exercise control

3  over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by

4  their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these

5  Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate

6  result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

7      74.    Plaintiff and the Class have no adequate remedy at law.  Only through the exercise

8  of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate

9  and irreparable injury that Defendants' actions threaten to inflict.

10                          **RELIEF REQUESTED**

11      **WHEREFORE**, Plaintiff and members of the Class demand judgment against Defendants

12  as follows:

13      A.    Declaring that this action is properly maintainable as a class action and certifying

14            Plaintiff as a representative of the Class and her counsel as Class Counsel;

15      B.    Preliminarily and permanently enjoining Defendants and their counsel, agents,

16            employees and all persons acting under, in concert with, or for them, from

17            proceeding with, consummating, or closing the Proposed Transaction, unless and

18            until the Company discloses the material information discussed above which has

19            been omitted from the Proxy;

20      C.    In the event that the Proposed Transaction is consummated, rescinding it and setting

21            it aside, or awarding rescissory damages to the Class;

22      D.    Awarding compensatory damages against Defendants, individually and severally, in

23            an amount to be determined at trial, together with pre-judgment and post-judgment

24            interest at the maximum rate allowable by law, arising from the Proposed

25            Transaction;

26      E.    Awarding Plaintiff the costs and disbursements of this action and reasonable

27            allowances for fees and expenses of Plaintiff's counsel and experts; and

28      F.    Granting Plaintiff and the Class such other and further relief as the Court may deem

COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) and 20(a) OF
THE SECURITIES EXCHANGE ACT OF 1934

1    just and proper.

2                              **<u>DEMAND FOR JURY TRIAL</u>**

3         Plaintiff hereby demands a trial by jury.

4    DATED: December 11, 2018                    **WOLF HALDENSTEIN ADLER**
5                                                  **FREEMAN & HERZ LLP**

6                                                By:   */s/ Rachele R. Byrd*
                                                 Rachele R. Byrd
7                                                Marisa C. Livesay
                                                 Brittany N. DeJong
8                                                750 B Street, Suite 2770
                                                 San Diego, CA 92101
9                                                Telephone: (619) 239-4599
                                                 Facsimile: (619) 234-4599
10                                               byrd@whafh.com
                                                 livesay@whafh.com
11                                               dejong@whafh.com

12
                                                 **Of Counsel**:
13
                                                 **WOLF HALDENSTEIN ADLER**
14                                                 **FREEMAN & HERZ LLP**
15                                               Gloria Kui Melwani
                                                 270 Madison Avenue
16                                               New York, NY 10016
                                                 Telephone: (212) 545-4600
17                                               Facsimile: (212) 686-0114
                                                 melwani@whafh.com
18
19                                               *Counsel for Plaintiff*

20

21

22

23

24

25

26

27   802329

28

                                         - 16 -

**CERTIFICATION OF PROPOSED LEAD PLAINTIFF**

I, Elaine Wang ("Plaintiff"), declare, as to the claims asserted under the federal securities laws, that:

1.     Plaintiff has reviewed a draft complaint against Pacific Biosciences of California, Inc. ("Pacific Biosciences") and its board of directors and has authorized the filing of a complaint substantially similar to the one I reviewed.

2.     Plaintiff selects Wolf Haldenstein Adler Freeman & Herz LLP and any firm with which it affiliates for the purpose of prosecuting this action as my counsel for purposes of prosecuting my claim against defendants.

3.     Plaintiff did not purchase the security that is the subject of the complaint at the direction of Plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

4.     Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

5.     Plaintiff's transactions in Pacific Biosciences securities that are the subject of the complaint during the class period specified in the complaint are set forth in the chart attached hereto.

6.     In the past three years, Plaintiff has sought to serve as a representative party on behalf of a class in an action filed under the federal securities laws, as specified below:

*Elaine Wang v. Corium International, Inc., et al*, 3:18-cv-6590 (N.D. Cal.); *Elaine Wang v. Foundation Medicine, Inc, et al.*, 1:18-cv-11435 (D. Mass)

7.     Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States that the foregoing information is correct to the best of my knowledge.

Signed this 10th day of December 2018.

| Transaction (Purchase or Sale) | Trade Date | Price Per Share | Quantity |
|---|---|---|---|
| Purchase | 6/18/2018 | $3.56 | 10 |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |